IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-632-AP

COLORADO BUILDING AND CONSTRUCTION TRADES COUNCIL;
INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 113;
UNITED ASSOCIATION OF PLUMBERS AND FITTERS, LOCAL 58;
EDWARD W. CORNELL;
KEVIN D. PHILLIPS;
RAY E. FERGUSON, III;
PHILIP SCHARKE;
KEN JACKSON; and
BRAD BINGHAM;

Plaintiffs,

v.

UNITED STATES DEPARTMENT OF DEFENSE; and
UNITED STATES DEPARTMENT OF THE AIR FORCE;

Defendants.

---

ORDER DISMISSING CASE FOR LACK OF SUBJECT MATTER JURISDICTION

---

KANE, J.

Plaintiffs are labor organizations and individual employees of an incumbent government contractor, Aleut Global Solutions LLC ("Aleut"). They sue to enjoin the Air Force's decision not to renew Aleut's contract to perform civil engineering operations and maintenance ("CEOMS") services at Schriever Air Force Base, and to insource these services to civilian workers instead. Aleut has not joined in the suit. Plaintiffs invoke this court's jurisdiction to review final agency action under the Administrative Procedures Act, 5 U.S.C. §§ 701-706 (2006), arguing the decision to insource the Schriever CEOMS work violated 10 U.S.C. § 2463 and related Department of Defense ("DoD") guidance

and therefore was "arbitrary, capricious . . . or otherwise not in accordance with law" under 5 U.S.C. § 706(2). Compl. ¶¶ 40, 46. Section 2463 prescribes guidelines and procedures for using civilian employees to perform DoD functions (i.e., insourcing), specifically including the collection and retention of cost information to be used in insourcing determinations. 10 U.S.C. § 2463(e).

The government moves to dismiss, arguing first that employees of an incumbent government contractor lack standing in this or any other court to challenge a decision to insource that contractor's services; and second, that even if Plaintiffs had standing to challenge the insourcing decision at issue, the challenge would be cognizable only under the Tucker Act, 28 U.S.C. § 1491, and, after the sunsetting of district courts' concurrent jurisdiction over such challenges under that Act, only in the Court of Federal Claims.

Because I agree that Congress, in enacting the Administrative Disputes Resolution Act of 1996 (ADRA), Pub.L. 104-320, 110 Stat. 3870, intended to supplant district courts' review jurisdiction under the APA with a trial run of concurrent jurisdiction under the Tucker Act, I conclude the sunsetting of that concurrent jurisdiction occurred on January 1, 2001, is binding on this court, and left the Court of Federal Claims with exclusive jurisdiction over the specific insourcing decision-making process at issue here. The question of whether employees of a government contractor may establish standing to challenge an insourcing decision independently of the contractor itself is for the Court of Federal Claims to decide.

*Facts.*

Plaintiff construction workers and tradesmen are employees of Aleut, a private military contractor that has performed civil engineering operations and maintenance ("CEOMS") services at Schriever Air Force Base since 2002. When the Air Force announced plans to insource the CEOMS services rather than renew the contract or solicit bids, the employees – together with their affiliated unions and the Colorado Building and Construction Trades Council – filed suit. Plaintiffs allege the Air Force failed to comply with 10 U.S.C. § 2463 and accompanying DoD guidance by failing to perform necessary evaluations and analysis before making the insourcing decision, and by manipulating availability requirements for the CEOMS services so that a civilian workforce would meet those guidelines. Plaintiffs contend these failures deprive individual workers of their employment and the unions of negotiated rights under their labor contracts, and pose mission and safety risks to the Air Force and the public. Plaintiffs specifically decline to challenge the Air Force action under the Tucker Act, claiming the APA forms an independent basis for review jurisdiction that survived both the amendment and sunsetting of Tucker Act concurrent jurisdiction. Plaintiffs contend the decision to insource the Schriever CEOMS services was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law within the meaning of 5 U.S.C. § 706(2)." For their relief, Plaintiffs ask that Defendants be ordered "to retain" the contract with their employer "for at least so long as it takes to perform the evaluation and analysis required by law" and then "either to award the contract or otherwise arrange for the

performance of the work in accordance with the statutory and regulatory requirements and DoD Guidance." Compl. ¶¶ 45-47.

*Discussion.*

A federal court has no subject matter jurisdiction over claims against the United States unless the government waives its sovereign immunity and consents to suit. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). The APA waives sovereign immunity to the extent a party "adversely affected . . . by agency action" seeks "relief other than money damages," but limits this waiver to situations where no "other statute that grants consent to suit expressly or impliedly forbids the relief that is sought." 5 U.S.C. § 702. The Tucker Act, by its terms, provides a right of action to "interested part[ies]" who object to a specific solicitation, proposal, or award of a government contract, or "any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1). The Tucker Act, in other words, is an "other statute" that grants consent to be sued for violations of statutes or regulations "in connection with" a "procurement or proposed procurement." The threshold question in this case, then, is whether the violations of 10 U.S.C. § 2463 alleged by Plaintiffs occurred "in connection with a procurement or proposed procurement."

In *Distributed Solution, Inc. v. United States*, 539 F.3d 1340 (Fed. Cir. 2008), the Federal Circuit considered the question of what constitutes a "procurement" for purposes of § 1491(b)(1), borrowing the definition that Congress provided in 41 U.S.C. § 403(2)(re-codified at 41 U.S.C. § 111) relating to the creation of the Office of Federal

Procurement Policy. Under that definition, "'procurement' includes all stages of the process of acquiring property or services, *beginning with the process for determining a need* for property or services and ending with contract completion and closeout." *Distributor*, 539 F.3d at 1345 (quoting 41 U.S.C. § 403(2))(emphasis original)). As long as the government had "at least initiated a procurement, or initiated 'the process for determining a need'" for a procurement, an action alleging violations of statutes or guidelines in connection with that process fall under the jurisdictional grant of the Tucker Act. *Id.* at 1346.

Applying *Distributor* in a case substantially similar to the one before me, the Fifth Circuit in *Rothe Dev., Inc., v. United States Dep't of Defense*, 666 F.3d 336, 338 (5th Cir. 2011) rejected an incumbent contractor's attempt to distinguish insourcing decisions from decisions involving "procurements," reasoning that a definition of "procurement" that includes "the process for *determining a need for services* . . . by necessity includes the choice to *refrain* from obtaining outside services." 666 F.3d at 339 (citing *Vero Tech. Support v. United States Dep't of Defense*, 437 Fed. Appx. 766, 769-70)(11th Cir. 2011)(emphasis original)). I find *Rothe* persuasive and note Plaintiffs address neither *Rothe* nor *Distributor* in their briefing.

Applying *Rothe* to the instant Complaint, the substance of the action being challenged by Plaintiffs was the Air Force's decision to stop procuring CEOMS services from Aleut and to insource them instead. Because that decision necessarily included the process for "determining the need for [CEOMS] services" and the choice to "refrain"

from obtaining them from an outside contractor, the decision-making process Plaintiffs challenge occurred "in connection with a procurement or proposed procurement" and the challenge is reviewable under the Tucker Act. *See Rothe* at 339. Because the Tucker Act constitutes an express grant by the government of consent to suit for the insourcing decision challenged by Plaintiffs, the caveat to the APA's waiver of sovereign immunity applies. *Id.* (holding APA does not waive sovereign immunity as to insourcing challenges because Tucker Act expressly grants consent to suit over claims that the government violated a "statute or regulation in connection with" an insourcing decision).[1]

Plaintiffs challenge the APA/ADRA/Tucker Act sovereign immunity waiver issue as a failed syllogism: They concede the major premise – i.e., that the Tucker Act, as amended by the ADRA, establishes exclusive jurisdiction in the Court of Federal Claims for actions by an "interested party . . . in connection with a procurement," but argue the minor premise – that they are "interested parties" permitted to sue under the Tucker Act – is inapplicable such that the syllogism fails as applied to them. The proper analysis, according to Plaintiffs, is that because they not "interested persons" for purposes of procurement challenges under the Tucker Act, the Tucker Act "expressly or impliedly forbids the relief which is sought." Under 5 U.S.C. § 702(2), then, Plaintiffs assert they

---

[1] The Federal Circuit recently reiterated that Tucker Act jurisdiction is exclusive in cases involving procurements, including "all stages of the process of acquiring services." *Resource Conserv'n Group, LLC v. United States*, 597 F.3d 1238, 1244-46 (Fed. Cir. 2010).

are free to invoke APA review jurisdiction as long as they meet the APA's prudential "zone of interest" standing analysis. Pls.' Resp. (Doc. 13) at 23-26.

Taken to its conclusion, Plaintiffs' argument is that as long as they are within the "zone of interest" of the APA's broad remedial purpose, they have standing to challenge the Air Force's decision to insource their employer's CEOMS contract *even if* their employer is entitled to do so only under the Tucker Act and only in the Court of Federal Claims. The argument is unpersuasive because it is the plain language and purpose of the ADRA that governs, not Plaintiffs' logical parry and thrust. The language and purpose of the ADRA makes clear that jurisdiction over procurement challenges was intended to be concurrent with the district courts, or exclusive to the Court of Federal Claims, as a substantive category of claims. That the same procurement challenge would reviewed under the Tucker Act if brought by the contractor and under the APA if brought by an individual or entity within some broad "zone of interest" is inconsistent with the express intent of Congress in enacting Section 12 of the ADRA.[2] Section 12(d) of the ADRA extended district courts' concurrent jurisdiction over procurement challenges (including, as established above, challenges to decisions to insource services previously outsourced

[2] The congressional intent behind ADRA "was to vest a single judicial tribunal [the CFC] with exclusive jurisdiction to review government contract protest actions." *Emery Worldwide Airlines, Inc. v. United States*, 264 F.3d 1071, 1079 (Fed. Cir. 2001); *PGBA, LLC v. United States*, 389 F.3d 1219, 1227 (Fed. Cir. 2004); *Rothe*, 666 F.3d at 339; 142 Cong. Rec. S 11849 (1996)(statement of Sen. Levin)("The Court of Federal Claims should be the single judicial forum with jurisdiction to consider all protests that can presently be considered by any district court or by the Court of Federal Claims:); *id.* at S 6156 (statement of Sen. Cohen)("consolidation of jurisdiction in the Court of Federal Claims is necessary to develop a uniform national law on bid protest issues . . .").

to contractors like Aleut), four a period of four years, *after which that concurrent jurisdiction would automatically sunset* unless Congress acted to preserve it. *See* Pub. Law 104-320, Sec. 12. Congress did not do so. While the elimination of concurrent district court jurisdiction over challenges to procurement decision-making indeed affords the government "home court advantage" before non-article III judges appointed by that government, *see* Note, "Are District Courts Still a Viable Forum for Bid Protests?," 32 Pub. Contract L. J. 393, 408-09 (Winter 2003), these are policy concerns for Congress to discern, not for courts to craft by reading the government's sovereign immunity waiver under the APA so broadly as to accommodate them.

*Conclusion*.

After the sunsetting of this court's concurrent jurisdiction with the Court of Federal Claims on January 1, 2001, under 28 U.S.C. § 1491(b)(1)(as amended by the ADRA, Pub. Law 104-32, Sec. 12(d)), Plaintiffs' challenge to the Air Force's decision to insource CEOMS services at Schriever AFB must be heard, if at all, by the Court of Federal Claims. The question of whether Plaintiffs, as employees of the incumbent contractor Aleut, have standing as "interested parties" to challenge the insourcing decision is also for the Court of Claims to consider.

Dated this 22d day of August, 2012, at Denver, Colorado.

s/John L. Kane
SENIOR U.S. DISTRICT JUDGE